# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:16CR386 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | |
| | ) | |
| DAVID CURRIE, | ) | OPINION AND ORDER |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J.:**

Defendant David Currie makes two requests for early release from imprisonment. To the extent Defendant bases his request on the First Step Act's Elderly Home Detention program (Doc. 69), the Court **DENIES** Defendant's request. As to Defendant's request for Compassionate Release due to COVID-19 (Doc. 70), the Court **DENIES** Defendant's request **WITHOUT PREJUDICE**.

## I. BACKGROUND

On December 13, 2016, a Grand Jury indicted Defendant with multiple counts stemming from a narcotics conspiracy, including one court of Conspiracy to Possess with Intent to Distribute and Distribution of Cocaine Base and Heroin, a violation of 21 U.S.C. § 846 ("Count 1").

In the Fall of 2017, Defendant pleaded guilty to Count 1 under a Plea Agreement. In exchange, the Government dismissed the remaining counts. On November 15, 2017, the Court

sentenced Defendant to 60 months imprisonment and 4 years supervised release.  Defendant is currently serving his imprisonment at Butner Low Federal Correctional Institution.

While imprisoned, Defendant has filed two motions.  On November 18, 2019, Defendant, acting *pro se*, filed his request for Elderly Home Detention under the First Step Act of 2018.  (Doc. 69).  Defendant attached to this Motion various administrative paperwork signifying he first sought relief from the Bureau of Prisons.  After being Ordered by the Court to do so, the Government responded in opposition.[1]

On April 28, 2020, Defendant, this time represented by counsel, filed a request for compassionate release.  (Doc. 70).  Defendant argued that the presence of COVID-19 and his prior medical conditions justify his compassionate release.  The Government opposed Defendant's request on May 4, 2020 (Doc. 72) and Defendant replied shortly thereafter (Doc. 73).

## II. LAW & ANALYSIS

### A. Elderly Home Detention

When the First Step Act of 2018 passed, Congress amended 34 U.S.C. § 60541 to allow for the early release of certain prisoners based on age, type of offense committed and other circumstances.  FIRST STEP ACT OF 2018, PL 115-391, Dec. 21, 2018, 132 Stat. 5194, 5238 ("First Step Act"), § 603; 34 U.S.C. § 60541(g).  Importantly, the amendment authorized the Attorney General to determine if and when home confinement was appropriate.  *United States v. Curry*, 2019 WL 508067 (E.D. Ky. Feb. 8, 2019); *Deffenbaugh v. Sullivan*, 2019 WL 1779573 (E.D.N.C. Apr. 23, 2019) (pursuant to the amendments of the First Step Act, discretion to release

---

[1] The Government's opposition conflates Defendant's prior request for home detention under the Elderly Home Detention program with his second request for compassionate release based on COVID-19.  Defendant's initial request, which Defendant filed prior to the pandemic, has nothing to do with COVID.  Defendant's Sur-Reply highlights the distinction between Defendant's requests.  (*See* Doc. 75).

a prisoner to home confinement lies solely with the Attorney General); *United States v. Carden*, 2020 WL 1873951 (D. Md. Apr. 15, 2020) (as 34 U.S.C. § 60541(g) states, authority for elderly prisoner release is given to the Attorney General). It did not grant authority to district courts to grant relief under the program. *Curry*, 2019 WL 508067; *U.S. v. Crawford*, 2019 WL 6615188 (M.D.N.C. Dec. 5, 2019) (collecting cases finding that § 60541(g) does not authorize judicial review); *Carden*, 2020 WL 1873951 (holding that the court did not have authority under § 60541 to order defendant to be released pursuant to the elderly home detention provision of the First Step Act).

Here, Defendant predicated his initial request for home detention under the First Step Act's Elderly Home Detention Program. (Doc. 69, PageID: 506). The Bureau of Prisons denied Defendant requested relief. (Doc. 69-1, PageID: 508). As noted above, this Court has no authority to grant Defendant's request under the Program. Accordingly, Defendant's Motion for Elderly Home Detention is without merit.

**B.     Compassionate Release**

Generally, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). However, in certain circumstances, a defendant may ask the court to modify a sentence, otherwise known as "compassionate release." *Id.* at § 3582(c)(1)(A). Before doing so however, one of two things must occur: either defendant has exhausted all administrative rights to appeal the Bureau of Prison's failure to bring a motion on his behalf or defendant has waited thirty days since he asked the warden of the facility to file a request on his behalf. *Id.*

In other words, prisoners must first exhaust their administrative remedies before seeking a district court's involvement. *United States v. Alam*, --- F.3d ----, 2020 WL 2845694, No. 20-

1298 (6th Cir. June 2, 2020); *United States v. Raia*, 954 F.3d 594 (3rd Cir. 2020); *United States v. Ciccone*, 2020 WL 1861653 (N.D. Ohio Apr. 14, 2020) (Polster, J.) (the amended § 3582(c)(1)(A) did not alter the requirement that prisoners must first exhaust administrative remedies before seeking judicial relief) (citations omitted). Moreover, courts cannot create exceptions to the mandatory exhaustion requirement. *Ross v. Blake*, 136 S.Ct. 1850, 1856-57 (2016) ("mandatory language means a court may not excuse a failure to exhaust, even to take such [special] circumstances into account"); *United States v. Alam*, --- F. Supp. 3d ----, 2020 WL 1703881 (E.D. Mich. Apr. 8, 2020) (collecting cases holding district courts cannot craft exceptions to exhaustion requirements in light of the COVID-19 pandemic).

Here, Defendant has not exhausted his administrative remedies before seeking the Court's involvement for compassionate release. Defendant argues he satisfied this requirement when he requested Elderly Home Confinement in March of 2019. (Doc. 70, PageID: 512). Therefore, Defendant contends he need not exhaust his administrative relief before bringing the current claim based on COVID-19.

Defendant's reliance on his previous administrative relief process is misguided. First, there is no indication that Defendant completed the procedure. Defendant's appeal to the Mid-Atlantic Regional Office was denied for failure to follow the proper procedure. (Doc. 69-3). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). The Bureau of Prisons instructed Defendant how to perfect his appeal. There is no indication Defendant followed that instruction.

More importantly, Defendant never properly exhausted the issue of COVID-19 with the Bureau of Prisons. Rather, his previous request was based on Elderly Home Confinement. Generally, "courts require administrative issue exhaustion…because it is usually 'appropriate under an agency's practice' for 'contestants in an adversary proceeding' before it to develop fully all issues there." *Sims v. Apfel*, 530 U.S. 103, 109 (2000) (quoting *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 36-37 (1952)). An administrative issue-exhaustion requirement "is an analogy to the rule that appellate courts will not consider arguments not raised before trial courts." *Id.* at 108-109. Here, Defendant has not properly exhausted the same issue. The Bureau of Prisons should have an opportunity to address Defendant's request for relief due to COVID-19.

Section 3582(c)(1)(A) *expressly requires* a defendant to "exhaust[] all administrative rights." 18 U.S.C. § 3582(c)(1)(A); *Raia*, 954 F.3d 594. Where Congress specifically mandate[s it], exhaustion is required." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). Defendant did not exhaust the issue that is before the Court. The Government invoked the exhaustion issue as a defense. *Alam*, 2020 WL 2845694, *4 ("[w]hen properly invoked, mandatory claim-processing rules must be enforced") (citations omitted). And despite other district courts holding otherwise due to COVID-19, this Court will not "engraft an unwritten 'special circumstances' exception onto" § 3582(c)(1)(A)'s exhaustion requirement. *Ross*, 136 S.Ct. at 1862.

The Court understands the general risks that COVID-19 presents to certain populations, including those in jails and prisons. However, requiring that Defendant first exhaust his administrative remedies not only upholds Congressional intent, but also protects "administrative agency authority" and "promotes efficiency." *Woodford*, 548 U.S. at 89 (2006). The Bureau of Prisons is taking the COVID-19 outbreak seriously. (Doc. 72, PageID: 539-41). As the Sixth

Circuit recently stated, "[t]he system is working as it should." *Alam*, 2020 WL 2845694, at *5. Allowing the Bureau to exercise its authority and expertise in this instance is even more important. *See generally*, *Raia*, 954 F.3d 594.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Elderly Home Detention (Doc. 69) is **DENIED**; and Defendant's Motion for Compassionate Release (Doc. 70) is **DENIED WITHOUT PREJUDICE**. The Court may consider the merits of Defendant's Motion for Compassionate Release after he properly exhausts his administrative remedies.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　s/ Christopher A. Boyko
　　　　　　　　　　　　　　　　　　**CHRISTOPHER A. BOYKO**
　　　　　　　　　　　　　　　　　　**Senior United States District Judge**

**Dated: June 5, 2020**